# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| v. ) | No. 3:18-PO-76-DCP |
| DALTON W. WALDROUP, ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This case is before the undersigned on the Defendant Dalton W. Waldroup's Motion to Suppress [Doc. 2], filed on October 23, 2018. *See* 28 U.S.C. § 636(a); Fed. R. Crim. P. 58. Defendant Waldroup asks the Court to suppress all evidence flowing from a traffic stop on April 22, 2018, because the ranger lacked probable cause to stop his vehicle. The parties appeared on November 14, 2018, for an evidentiary hearing on the motion. Assistant United States Attorney LaToyia T. Carpenter appeared on behalf of the Government. Attorney Bryce W. McKenzie represented Defendant Waldroup, who was also present. After hearing the testimony of witnesses and the arguments of counsel, the undersigned took the matter under advisement. For the reasons discussed in full below, the Court finds that the ranger had probable cause to stop the Defendant's pickup truck for speeding.

## I. POSITIONS OF THE PARTIES

On April 22, 2018, Ranger Frederick Kissner conducted a traffic stop of Defendant Waldroup in the Great Smoky Mountains National Park. Ranger Kissner issued violation notices to Defendant Waldroup for operating a motor vehicle under the influence of alcohol to a degree that renders the driver incapable of safe operation (TE41 6946770), operating a motor vehicle with

a blood alcohol concentration of .08 or greater (TE41 6946771), and speeding by traveling sixty miles per hour in a thirty-five-mile-per-hour zone (TE41 7332415).  Defendant Waldroup contends that Ranger Kissner violated his Fourth Amendment right to be free of warrantless seizure by stopping him without probable cause.  He argues that the totality of circumstances surrounding the stop reveals that Ranger Kissner could not have identified his truck as the vehicle that was speeding.

The Government responds [Doc. 3] that Ranger Kissner had both reasonable suspicion and probable cause to stop the Defendant for speeding and for releasing black smoke from his muffler.

## II.  SUMMARY OF THE TESTIMONY AND EXHIBITS

The Government presented the testimony of United States Park Ranger Frederick John Karl Kissner.  Ranger Kissner testified that he has worked as a federal law enforcement officer in the Great Smoky Mountains National Park for the last four years.  He said that his duties include investigating speeding and that he is a certified radar operator [*see* Exh. 1, Certificate of Competency as Doppler Traffic Radar Operator].  Ranger Kissner said that in 2015, he received training on how a radar works and how to use a radar.  He was also trained to estimate the speed of a vehicle visually.

Ranger Kissner stated that on or around 4:00 p.m., on April 22, 2018, he was on duty and driving northbound on Highway 441 in a thirty-five-mile-per-hour zone.  He described the weather as rainy and said it was sprinkling at that time.  Ranger Kissner said he saw the Defendant driving a black Dodge Ram truck southbound on Highway 441.  He said the Defendant appeared to be traveling above the speed limit, and he saw a large amount of black smoke come from the truck. He stated that the emission of black smoke is illegal under Tennessee law.  Ranger Kissner said

he activated his radar in "moving mode" and confirmed his visual estimation that Defendant was going sixty miles-per-hour in a thirty-five-mile-per-hour zone.

Ranger Kissner stated that while he is driving, his radar is in "stand-by mode." He said he presses a button to activate the "forward-moving mode." He explained that when the radar is in moving mode, it takes his cruiser's speed into account. He said the radar registers speed "very quick[ly]" and "nearly instantaneous[ly]." Ranger Kissner stated that it is common for other cars to be on the road at the time he is activating his radar and that the radar picks up the speed of the biggest target. Ranger Kissner said at the time he deployed his radar on the Defendant's truck, no other vehicles were in front of it. He acknowledged that he passed other vehicles traveling southbound but said that was well before he activated his radar. Thus, Ranger Kissner testified he was "pretty sure" his radar picked up the Defendant's truck.

Ranger Kissner said that once his radar indicated the Defendant was traveling at sixty miles per hour, he activated his emergency equipment, including his blue overhead lights. He said he turned on his siren. Ranger Kissner stated that he turned around to pursue the Defendant's truck, when it was safe to do so. He said once he turned around, there were two trucks between him and the Defendant. He related that all three trucks, which appeared to be a caravan, were traveling above the speed limit but that the Defendant was going the fastest of the three. He said the Defendant's truck was the lead truck, and it was pulling away from the others. Ranger Kissner said he passed two trucks and caught up to the Defendant, who was a significant distance in front of the other two trucks.

Ranger Kissner stated that his in-car camera was operating correctly that day. He testified to a video recording [Exh. 2] from his in-car camera. Ranger Kissner testified that his radar was properly calibrated. He testified to a certificate, which reflected that his radar was last calibrated

on June 18, 2018. Ranger Kissner said his radar is calibrated yearly but acknowledged that he could not locate the calibration certificate from 2017. He said that he gave the Defendant a citation for speeding and two citations for driving under the influence. Ranger Kissner said he did not give the Defendant a citation for the black smoke, because he felt the Tennessee law on this was "gray."

On cross-examination, Ranger Kissner testified that the radar in his cruiser is a Golden Eagle II unit. He was not sure whether his initial training was on a Golden Eagle II but said he was trained on whatever type of radar the National Park Service was using at that time. Ranger Kissner explained the buttons, lights, and messages on his radar unit. He said he could activate the moving mode on the radar by pressing a remote or the console. He stated that when he is patrolling on a two-lane road, the radar defaults to checking the speeds of vehicles traveling in the opposite direction.

Ranger Kissner explained that the radar calculates the speed of his patrol car by bouncing waves off the ground and other stationary objects. He said that in training, he was taught to make sure that the radar's reading of the patrol car's speed matches the speedometer on the patrol car. Ranger Kissner stated that he performs this check daily, at the beginning of his shift when he is on patrol, to confirm that the radar reading is within one mile per hour of his patrol car. He said he does not document this check. Ranger Kissner said he also uses thirty-mile-per-hour and fifty-five-mile-per-hour tuning forks to test the stationary and moving modes on the radar, in order to make sure that the radar is working correctly. He said that he tests the mode in either opposite or same direction and that there is no need to test both. He said he performs the test with the tuning forks in the cruiser parking area and that he did this test on April 22, 2018. He said he does this test daily and his radar's calibration has never been "off." He acknowledged that sometimes he has had to turn the radar off and then on again.

Ranger Kissner testified that his patrol car has both a front and a rear antenna. He agreed that a radar "is a straight beam" and that hills, cuts, curves, and elevation can affect the radar's ability to measure speed. He also acknowledged that a vehicle traveling in front of the subject vehicle can affect how the radar registers speed. He said that the front antenna picks up all vehicles in front of him within a cone. He said the radar hits everything within that cone, including vehicles traveling in the same direction as the patrol car. Ranger Kissner did not know the width or length of the cone. He testified that the radar can take the speed of a vehicle traveling across a curve. He said this is called the "cosign effect" and that it takes the angle into account. He said that for a vehicle traveling on a curve, the radar may display a speed slightly lower than the vehicle's actual speed.

Ranger Kissner estimated that when he first saw the Defendant's vehicle, it was about seventy-five yards away. He said at that time, his radar was in the "standby mode." Ranger Kissner testified to a twelve-second segment of the video recording from his in-car camera. He agreed the area where he first encountered the Defendant's truck was on a road curving up a high mountain. Although Ranger Kissner did not recall his speed, he said he was traveling around thirty-five miles per hour. He stated that within a second of seeing the Defendant's truck, he activated his radar. He said at that point, three trucks traveling in the opposite lane and a red car traveling in front of him were within the radar's cone. Ranger Kissner said three seconds later, he pulled over and turned around to follow the Defendant. He stated that he first saw the Defendant's truck at the four-second mark of the video clip and passed the Defendant's truck at the eight-second mark. He agreed that it is possible that the trucks traveling behind the Defendant slowed down when they saw his patrol car, because when he turned to catch up to the Defendant, they were not traveling at sixty miles per hour. Ranger Kissner explained that the black smoke coming from the Defendant's truck is a faint haze on the video recording.

5

Ranger Kissner testified that when he first saw the Defendant, he believed the Defendant was going around sixty miles per hour, based upon his visual estimate. He reiterated that his radar picked up the biggest target within the cone. He agreed that the actual size of three trucks traveling together appeared to be the same. Ranger Kissner stated that his radar does not make a sound when it is in standby mode. He said that when the radar is activated, the pitch of the sound changes depending on the speed of the subject vehicle. He said if the radar's sound contains static, he knows that it is not a good reading. He agreed that it is possible that the truck behind the Defendant was speeding in order to catch up with the Defendant.

Ranger Kissner stated that in training, he was taught to perform a daily check of his radar. He said that he does not skip this check, unless he receives a search and rescue call at the start of his shift.

On redirect examination, Ranger Kissner testified that when he activated his radar after seeing the Defendant's truck, his radar was in forward-facing, opposite-moving mode. He repeated that although curves can affect how the radar picks up a vehicle's speed, due to the cosign effect, curves make the radar report a slightly lower speed than the vehicle's actual speed. Ranger Kissner stated that if the cosign effect occurred in this case, it would mean that the Defendant was traveling faster than sixty miles per hour.

Ranger Kissner stated that on the morning of April 22, he checked the calibration of his radar, consistent with his training. He related that the radar made no errors during the check. He said that at the point he saw the Defendant's truck, he had been traveling behind a red car for some time and that neither he, nor the red car, were going sixty miles per hour. Ranger Kissner testified that the Defendant's truck was closer to him than the other two trucks following the Defendant. He said that, while not impossible, it was highly unlikely that his radar skipped over the

6

Defendant's truck and reported the speed of the truck traveling behind the Defendant. In any event, Ranger Kissner said the Defendant's truck was going at least as fast as the two trucks behind him, and he appeared to be the leader of a line of vehicles that were exceeding the speed limit.

## III. FINDINGS OF FACT

Based upon the testimony of Ranger Kissner and the exhibits in this case, the Court makes the following factual findings:

On April 22, 2018, Ranger Frederick Kissner was on patrol in the Great Smoky Mountains National Park. At the start of his shift, Ranger Kissner checked the calibration of his in-car radar and found it to be working properly. At some point that day, he checked the radar against the speed of his patrol car and, again, found the radar to be working properly. Around 4:11 p.m., Ranger Kissner was traveling northbound on Highway 441. He saw a black Dodge Ram pickup truck traveling southbound and coming into a curve. The truck appeared to be speeding, and Ranger Kissner saw black smoke coming from the truck. Ranger Kissner visually estimated that the truck was going sixty miles per hour in a thirty-five-mile-per-hour zone. The ranger immediately activated his radar, which reported that the truck was going sixty miles per hour. Ranger Kissner drove to a safe spot, turned around, and activated his emergency blue lights and siren. He passed two trucks and then pulled over Defendant Waldroup, the driver of the black Dodge Ram.

## IV. ANALYSIS

The Fourth Amendment protects citizens against unreasonable searches or seizures. U.S. Const. amend IV. If an "officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment." *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993), *cert. denied*, 513 U.S. 828 (1994).

Whether a traffic stop is an unreasonable seizure in violation of the Fourth Amendment is assessed, like other alleged Fourth Amendment violations, by objectively evaluating the officer's conduct in light of the surrounding circumstances known to the officer. *Id.* at 388; *see Whren v. United States*, 517 U.S. 806, 810 (1996) (holding that "[a]s a general matter, the decision to stop an automobile is reasonable [within the meaning of the Fourth Amendment] where the police have probable cause to believe that a traffic violation has occurred"); *United States v. Townsend*, 305 F.3d 537, 541 (6th Cir. 2002). Probable cause is "reasonable grounds for belief supported by less than prima facie proof but more than mere suspicion," *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). In other words, probable cause means a substantial chance or likelihood of criminal conduct. *Ferguson*, 8 F.3d at 392 (citing *Illinois v. Gates*, 462 U.S. 213, 244 n.13 (1983)).

In the instant case, Defendant Waldroup argues that Ranger Kissner lacked probable cause to stop him for speeding. He contends that at the time Ranger Kissner saw his truck and activated his radar, three other vehicles were in the radar's cone. Moreover, he contends that he was coming through a cut in the hill and around a curve, both factors which can affect the radar. Thus, he asserts that it is unlikely the radar reported the speed of his truck. He also contends that if he had been traveling at sixty miles per hour, he would have been moving too fast for the ranger to activate his radar and calculate the truck's speed. He argues that he was not weaving and the video does not show his truck billowing black smoke. Finally, he notes that the Government did not demonstrate that the radar was officially calibrated at the time of the stop. The Defendant contends that the totality of the circumstances during the four seconds he was in view of the ranger do not provide probable cause or reasonable suspicion for a traffic stop. He maintains that because the stop was illegal, all evidence gained during the stop must be suppressed.

The Court finds the totality of the circumstances provided probable cause for Ranger Kissner to stop the Defendant's truck for speeding. When Ranger Kissner saw the Defendant's

truck, he visually estimated that the Defendant was traveling at sixty miles per hour based upon his training. Ranger Kissner then activated his radar, which confirmed that the Defendant's truck was traveling at sixty miles per hour. Ranger Kissner testified that he had checked the calibration of his radar at the beginning of his shift, both with tuning forks and against the speedometer of his patrol car and that his radar was accurately reporting speed on that day. Thus, the totality of the circumstances reveal that Ranger Kissner had probable cause to stop the Defendant for speeding.

Citing to *United States v. Ruiz,* the Defendant argues that the Government has failed to meet its burden of proving probable cause by a preponderance of the evidence, based upon discrepancies in Ranger Kissner's testimony and the video recording. *See United States v. Ruiz*, 832 F. Supp. 2d 903, 912-14 (M.D. Tenn. 2011) (finding the officer was not credible). However, in this case, the Court finds the video recording does not contradict Ranger Kissner's testimony about the Defendant's speed. The Court finds that even if the radar's calculations were skewed by the elevation or the curve of the road, it would report a speed slightly lower than his actual speed. Moreover, even if the radar gave the speed of the truck behind the Defendant, Ranger Kissner testified that the Defendant was going faster than the two trucks traveling behind him. Additionally, unlike the trial judge in *Ruiz*, the undersigned finds Ranger Kissner to be credible.[1] Thus, the Court finds that even if the topography affected the radar or the radar reported the speed

---

[1] Although the video recording [Exh. 2] does not clearly show the Defendant's truck emitting black smoke before it passes Ranger Kissner's car, the undersigned finds that this does not discredit Ranger Kissner's testimony. First, the Court notes the video shows that Ranger Kissner's windshield has water droplets on it, which distort the view from the camera. Second, Ranger Kissner testified that although he saw black smoke come from Defendant's truck, he opted not to charge the Defendant with regard to the smoke. He indicated that the Defendant had not clearly violated the Tennessee statute, which he characterized as "gray" or vague. Accordingly, even if the absence of the smoke on the video could be characterized as a discrepancy, it is not one that affects Ranger Kissner's credibility. *C.f., Ruiz*, 832 F. Supp. 2d 903, 913 (finding that the officer's testimony differed from his report narrative and the video recording from the in-car camera in a key aspect, i.e., the location of the patrol car while pacing the suspect vehicle).

of the truck behind the Defendant, Ranger Kissner still had probable cause to stop the Defendant for speeding.

## V.  CONCLUSION

After carefully considering the parties' filings and arguments, the evidence, and the relevant legal authorities, the Court finds no Fourth Amendment violation occurred in this case, because the ranger had probable cause to stop the Defendant's truck for a traffic violation. Accordingly, the Defendant's Motion to Suppress [**Doc. 2**] is **DENIED**. This case will be set for trial.

**IT IS SO ORDERED.**

ENTERED:

*Debra C. Poplin*
Debra C. Poplin
United States Magistrate Judge